## Spaletta v. Barrett.

*Benjamin B. Hoar*, for plaintiff; *Howard E. Stern*, for defendant.

BROWN, JR., J., July 20, 1931.—Plaintiff sued defendant on two promissory notes, one in the sum of $1000, and the other for $800, dated July 1, 1926, payable one year after date, with privilege of renewal for one year, to the order of the Union Loan and Trust Company, Trustee, or bearer, signed by

George C. Boyer and Jessie M. Boyer. They were delivered to defendant, renewed by the makers for the period of one year, and subsequently thereto and before maturity, defendant, for value received, endorsed and delivered them to plaintiff, who is the present owner and holder thereof. The notes were presented to the makers for payment, and payment was refused.

On September 20, 1927, plaintiff and defendant entered into a written agreement for the exchange of two pieces of real estate owned respectively by each of them. This agreement provides that "The said party of the first part [plaintiff] further agrees to take over, in lieu of cash consideration, notes to the amount of Eighteen Hundred ($1800.00) Dollars, bearing interest at the rate of 7 per cent. per annum, payable semi-annually, held in the name of Dr. G. A. Boyer of Union City, Indiana, due July 1, 1928, secured by real estate in Union City, Ind., as per agreement to be produced by the party of the second part [defendant]."

On November 1, 1927, plaintiff and defendant executed another agreement in writing, which, after reciting that the two notes were being signed over to plaintiff and the execution of deed for certain property in Union City, Indiana, by defendant to plaintiff, which was being placed with the Union Loan and Trust Company, in escrow, states "That said Union Loan and Trust Co. shall deliver to the party of the second part [plaintiff] said deed placed in escrow if said George C. Boyer and Jesse M. Boyer, husband and wife [makers of the notes], shall fail to pay to the party of the second part [plaintiff] or to the Union Loan and Trust Company, Trustee, the two notes mentioned above of $1000.00 and $800.00, respectively, then the said Union Loan and Trust Co. shall deliver said deed placed in escrow to the party of the second part [plaintiff], and the said party of the second part [plaintiff] shall have the right of immediate possession of said real estate. But in case the said George C. Boyer and Jesse M. Boyer, husband and wife, pay the said two notes when due, then in that case the Union Loan and Trust Co. shall deliver said deed placed in escrow to the parties of the first part [defendant], and in the meantime said deed placed in escrow and a copy of this contract is to remain in the hands of the Union Loan and Trust Co. for the purpose and purposes above written."

At the conclusion of the trial, there being no disputed questions of fact, the presiding judge directed a verdict for the plaintiff in the sum of $2097. Defendant has filed his motion for judgment *non obstante veredicto*, contending that he is not liable on the two notes because by the agreement of November 1, 1927, plaintiff must look to the real estate in Union City, Indiana, as that was the only remedy provided for in the event that the notes were not paid. On the other hand, it is plaintiff's view that this real estate was merely collateral security for the payment of the notes.

The transaction between plaintiff and defendant was the exchange of their respective properties. They were not of the same value, and the payment of $1800 in cash by defendant to plaintiff became necessary to equalize this. The original agreement between them of September 20, 1927, specifically states that "in lieu of cash consideration" the two notes in suit were taken over by plaintiff and that these were "secured" by real estate in Union City, Indiana. That it was not the intention of the parties that this real estate should take the place of the notes seems to us apparent from the very nature of the transaction. If it had been intended to substitute the property in Union City for $1800 in cash, then the original agreement would have so provided. There is nothing in it to indicate that plaintiff was interested in acquiring real estate in Indiana. The primary object of the agreement was the exchange of the properties in Pennsylvania, and, as incidental to this, payment by defendant

of $1800 in cash was required; that plaintiff agreed *in lieu of cash consideration* to accept the two notes *secured* by the property in Indiana did not effect a substitution of this property for defendant's obligation to pay.

There is nothing in the subsequent agreement of November 1, 1927, to indicate a different intention, or, as defendant contends, that plaintiff's only remedy was to resort to the property in Indiana. That agreement provides that the deed, executed by defendant to plaintiff and placed in escrow, should be delivered to plaintiff if the makers of the notes failed to pay them, or in case they were paid then the said deed should be delivered to defendant. Thus the deed was put up by defendant merely as collateral, to be returned to him if the notes were paid. It is not provided that the deed should take the place of the notes.

Defendant argues that if it was the intention of the parties that the land in Indiana was merely collateral security for the payment of the notes, the agreement of November 1, 1927, should have provided for the return of the property to defendant upon payment of the notes by him, or for the sale of the property with a right of action by plaintiff against defendant for any deficiency resulting, with a corresponding right of defendant to an accounting by plaintiff for any surplus realized. That agreement does provide that if the makers paid the notes, the deed, which was in escrow, should be delivered to defendant. Furthermore, it does not relieve him of his liability as endorser, and when the makers failed to pay the notes, he was obligated to do so. If the deed for the property had been delivered to plaintiff by the trustee, as provided in the agreement, and subsequently defendant had paid the notes, plaintiff would no more be entitled to retain title to the real estate than the holder of any collateral, who had been paid in full, would be permitted to keep it. However, he has never had possession of the deed, and so that question is not before us.

The agreement of September 1, 1927, states that the notes were "secured" by real estate in Indiana in accordance with "agreement to be produced by" defendant. No such agreement was offered in evidence, but apparently defendant had obtained his deed to the property in Indiana from the makers of the notes by way of collateral security for their payment. Whatever his rights were against them he attempted to transfer to plaintiff. However, he is seeking to do more than this by insisting that the real estate, which was put up by the makers as collateral for him, should be deemed now to have taken the place of the notes and so become, instead of collateral, the primary obligation to plaintiff. We are of the opinion that no such inference can be drawn from his agreements with plaintiff.

Defendant contends that the makers of the notes were not unconditionally bound to pay them but could elect not to do so, in which event the sole right of the holder of the notes was to take the deed for the property placed in escrow. We do not think that it was intended to place within the absolute discretion of the makers, who were not parties to any agreement with plaintiff, the determination of whether plaintiff should receive cash or this property in Indiana. The agreements between plaintiff and defendant do not substantiate defendant's position. They do not provide that plaintiff's sole remedy against defendant is the right to the real estate. They do not relieve the latter of his obligation as endorser, and in the absence of a specific provision to that effect he cannot avoid his liability to plaintiff.

It is to be noted that the agreement of November 1, 1927, provided that if the makers failed to pay the two notes, the Union Loan and Trust Company should "deliver" to plaintiff the deed for the property in Indiana. No delivery or legal tender of the deed was made. The trust company merely wrote

plaintiff a letter on June 8, 1928, stating that the maker of the notes "informs us that he is not able to carry out the terms of this contract and asks that his two notes be mailed to us to be delivered to him and that we deliver to you the deeds for the property that we hold. If you will enclose check for $2.20, which is for the recording of the two deeds and the transfer of the same, we will have them transferred and recorded and mail the same to you." Plaintiff ignored this, as he had. a right to do, for at most it was merely an offer to deliver. Furthermore, the letter was written prior to the due date of the notes, which was July 1, 1928, by reason of the extension. When the notes were not paid on that date, the trust company should have delivered the deed to plaintiff, and until then no obligation was imposed upon plaintiff.

The letter of June 8, 1928, also asks that, in forwarding the two notes to be delivered to the makers, plaintiff instruct the trust company to mark the two notes paid on delivery of them to the makers. But there is no provision in the agreement of November 1, 1927, that by placing the deed for the property in Indiana in escrow, defendant was relieved of his obligation as endorser, or that the notes were to be considered fully paid in so far as he was concerned, or that if they were not paid by the makers, they were to be canceled by plaintiff. It does not state that upon delivery of the deed to plaintiff, the notes in his hands were to be regarded as paid, whereupon he should surrender them to the defendant, or to the trust company, or to the makers.

Defendant's motion for judgment *non obstante veredicto* is dismissed.